```
MOT
IHAB T. OMAR, ESQ.
Nevada Bar No.: 9138
6600 West Charleston Blvd., Suite 134
Las Vegas, NV 89146
(702) 834-7500 tele
(702) 834-7505 fax
Attorney for Debtor(s)
```

**UNITED STATES BANKRUPTCY COURT**
**CLARK COUNTY NEVADA**

In Re: EDWIN E. GUZMAN           )
                                 )   Case No.: BK-09-33030-BAM
                                 )
       Debtors,                  )   DATE: February 25, 2010
                                 )   TIME: 2:30 p.m.
                                 )
                                 )

## MOTION TO VALUE COLLATERAL, "STRIP OFF" AND MODIFY RIGHTS OF COUNTRYWIDE HOME LENDING, ITS SUCCESSORS AND/OR ASSIGNS PURSUANT TO 11 USC §506 (a) AND §1322

COMES NOW, EDWIN GUZMAN, (hereinafter "Debtor") by and through his counsel of record, IHAB T. OMAR, ESQ., of the Law Offices of Ihab T. Omar, and moves this court pursuant to 11 U.S.C. §506 (a) and §1332, and Bankruptcy Rules 3012 and 9014 and states:

1. Debtors filed the instant Chapter 13, Case Number 09-33030 BAM on December 8, 2009.

2. On the petition date, debtor owned real property located at 4377 Mesa Hill Drive Las Vegas, Nevada 89147 (hereinafter the "subject property").

3. The value of the subject property is no more than $175,000.00 according to the property value appraisal attached hereto.

4. At the time of filing the instant petition, the subject property was subject to a priority lien held by CITIMORTGAGE INC in an amount of approximately $256,376.00

///

5. Therefore on the date the instant bankruptcy was filed, no equity existed in the subject property to satisfy the claims of COUNTRYWIDE HOME LENDING, its successors and assigns.

6. COUNTRYWIDE HOME LENDING its successors and assigns (hereinafter "Creditor") were wholly unsecured on the petition date and if the subject property were sold at auction Creditor would receive no proceeds.

7. Accordingly, debtors request that Your Honor find that Creditor is unsecured and should be reclassified as general unsecured claim to receive pro rata with other general unsecured creditors through the debtors chapter 13 plan.

## LEGAL ARGUMENT

In *In re Zimmer*, 313 F.3d 1220 (9th Cir. 2002), the court stated that a wholly unsecured lien holder's claim can be modified and reclassified as a general unsecured claim pursuant to 11 U.S.C. §506(a), despite the anti-modification language in §1322(b)(2). Specifically the court held:

> Section 506(a) divides creditors' claims into "secured…claims" and "unsecured claims." Although the conventional interpretation of "secured" might include any claim in which the creditor has a security interest in the debtor's property, §506(a) makes clear that the status of a claim depends on the valuation of the property. An allowed claim of a creditor secured by a lien on property in which the estate has an interest…is a secured claim to the extent that of the value of such creditor's interest in the estate's interest in such property…and is an unsecured claim to the extent that the value of such creditor's interest…is less than the amount of such allowed claim.
>
> …
>
> To put it more simply, a claim such as a mortgage is not a "secured claim" to the extent that it exceeds the value of the property that secures it. Under the Bankruptcy Code, "secured claim" is thus a term of art; not every claim that is secured by a lien on property will be considered a "secured claim." Here, it is plain that PSB Lending's claim for the repayment of its loan is an unsecured claim, because its deed of trust is junior to the first deed of trust, and the value of the loan secured by the first deed of trust is greater than the value of the house.

Accordingly, since the claim held by COUNTRYWIDE HOME LENDING, it successor and assigns is wholly unsecured (in that there is no extant equity above the first mortgage in the subject property), Your Honor should reclassify said claim to a general

unsecured claim to be received pro rata with like unsecured creditors. COUNTRYWIDE HOME LENDING, its successors and/or assigns should also be stripped of its secured rights under state law since no maintainable security interest in the property exists.

Further, the debtor is not required to file an adversary proceeding to achieve the relief requested herein. Debtor may bring a motion to "strip off" a consensual lien by motion. SEE *In re Williams*, 166 B.R. 615 (Bankr. E.D. VA 1994), *In re Fuller*, 255 B.R. 300 (Bankr. W.D. Mich. 2000), *In re Hoskins*, 262 B.R. 693 (Bankr. E.D. Mich 2001), *In re King*, 290 B.R. 641 (Bankr. C.D. Ill. 2003), *In re Hill* 304 B.R. 800 (Bankr. S.D. Ohio 2003), *In re Sadala*, 294 B.R. 180 (Bankr. M.D. Fla. 2003), *In re Fisher*, 289 B.R. 544 (Bankr. W.D. N.Y. 2003).

Wherefore Debtor prays that this court:

8. Find that COUNTRYWIDE HOME LENDING, its successors and/or assigns are not a holder of a secured lien on the subject property;

9. Immediately avoid (Strip off) cancel and extinguish COUNTRYWIDE HOME LENDING, its successors and/or assigns wholly unsecured claim/lien from the subject property pursuant to 11 U.S.C. §506(a);

10. Reclassify COUNTRYWIDE HOME LENDING, it successors and/or assigns claim as a general unsecured claim to be paid pro rata with other general unsecured creditors throught the debtor's chapter 13 plan; and

11. Such other relief the Court finds appropriate.

## CONCLUSION

For the foregoing reasons, Debtors respectfully request that Your Honor grant its motion to value collateral, "strip off" and modify rights of COUNTRYWIDE HOME LENDING, its successors and/or assigns pursuant to 11 USC §506 (a) and §1322.

Dated: 1/15/10

_____
IHAB T. OMAR, ESQ.
6600 West Charleston Blvd., Suite 134
Las Vegas, NV 89146
(702) 834-7500 *tele*
(702) 834-7505 *fax*
Attorney(s) for Debtors

| Borrower/Client | N/A | | | File No. | 100558J |
|---|---|---|---|---|---|
| Property Address | 4377 Mesa Hill Dr | | | | |
| City | LAS VEGAS | County CLARK | State NV | Zip Code | 89147-5057 |
| Lender | Homeowner | | | | |



1/14/2009

4377 Mesa Hill Dr
;IMARRON MEADOWS-UNIT 3 PLAT BOOK 63 PAGE 77 LOT 115 BLOCK (
LAS VEGAS, NV 89147-5057

Homeowner

Summary of Salient Features ............................................................................................................................................................ 1
Letter of Transmittal ........................................................................................................................................................................ 2
Exterior-Only .................................................................................................................................................................................... 3
Subject Photos ................................................................................................................................................................................. 9
Comparable Photos 1-3 ................................................................................................................................................................. 10
Location Map ................................................................................................................................................................................ 11
USPAP Identification ..................................................................................................................................................................... 12
License .......................................................................................................................................................................................... 13

# SUMMARY OF SALIENT FEATURES

## SUBJECT INFORMATION

| | |
|---|---|
| Subject Address | 4377 Mesa Hill Dr |
| Legal Description | CIMARRON MEADOWS-UNIT 3 PLAT BOOK 63 PAGE 77 LOT 115 BLOCK C |
| City | LAS VEGAS |
| County | CLARK |
| State | NV |
| Zip Code | 89147-5057 |
| Census Tract | 0029.50 |
| Map Reference | METRO MAP 35- E5 |

## SALES PRICE

| | |
|---|---|
| Sale Price | $ N/A |
| Date of Sale | |

## CLIENT

| | |
|---|---|
| Borrower/Client | N/A |
| Lender | Homeowner |

## DESCRIPTION OF IMPROVEMENTS

| | |
|---|---|
| Size (Square Feet) | 2,274 |
| Price per Square Foot | $ N/A |
| Location | Suburban |
| Age | 15 Years |
| Condition | Good |
| Total Rooms | 9 |
| Bedrooms | 3 |
| Baths | 3 |

## APPRAISER

| | |
|---|---|
| Appraiser | Jeremy Hughes |
| Date of Appraised Value | 1/14/2009 |

## VALUE

| | |
|---|---|
| Final Estimate of Value | $ 175,000 |

Nevada Appraisals LLC
9193 Regal Morning Ct Las Vegas, NV 89148
Office: 702-917-7092
Fax: 702-924-6281


Homeowner
4377 Mesa Hill Dr


Re: Property:    4377 Mesa Hill Dr
                 LAS VEGAS, NV 89147-5057
    Borrower:    N/A
    File No.:

In accordance with your request, we have appraised the above referenced property. The report of that appraisal is attached.

The purpose of this appraisal is to estimate the market value of the property described in this appraisal report, as improved, in unencumbered fee simple title of ownership.

This report is based on a physical analysis of the site and improvements, a locational analysis of the neighborhood and city, and an economic analysis of the market for properties such as the subject. The appraisal was developed and the report was prepared in accordance with the Uniform Standards of Professional Appraisal Practice.

The value conclusions reported are as of the effective date stated in the body of the report and contingent upon the certification and limiting conditions attached.

It has been a pleasure to assist you. Please do not hesitate to contact me or any of my staff if we can be of additional service to you.

Sincerely,

Jeremy Hughes

# Exterior-Only Inspection Residential Appraisal Report   File # 100558J

The purpose of this summary appraisal report is to provide the lender/client with an accurate, and adequately supported, opinion of the market value of the subject property.

## SUBJECT

| Field | Value |
|---|---|
| Property Address | 4377 Mesa Hill Dr |
| City | LAS VEGAS |
| State | NV |
| Zip Code | 89147-5057 |
| Borrower | N/A |
| Owner of Public Record | GUZMAN EDWIN E |
| County | CLARK |
| Legal Description | CIMARRON MEADOWS-UNIT 3 PLAT BOOK 63 PAGE 77 LOT 115 BLOCK C |
| Assessor's Parcel # | 163-21-612-039 |
| Tax Year | 2010 |
| R.E. Taxes $ | 2,103.38 |
| Neighborhood Name | CIMARRON MEADOWS |
| Map Reference | METRO MAP 35-E5 |
| Census Tract | 0029.50 |
| Occupant | ☒ Owner ☐ Tenant ☐ Vacant |
| Special Assessments $ | 0.0 |
| | ☐ PUD  HOA $ ☐ per year ☐ per month |
| Property Rights Appraised | ☒ Fee Simple ☐ Leasehold ☐ Other (describe) |
| Assignment Type | ☐ Purchase Transaction ☐ Refinance Transaction ☒ Other (describe) Bankruptcy Proceedings |
| Lender/Client | Homeowner   Address  4377 Mesa Hill Dr |

Is the subject property currently offered for sale or has it been offered for sale in the twelve months prior to the effective date of this appraisal?  ☐ Yes  ☒ No
Report data source(s) used, offering price(s), and date(s).   No offerings found on Las Vegas MLXChange.

## CONTRACT

I ☐ did ☐ did not analyze the contract for sale for the subject purchase transaction. Explain the results of the analysis of the contract for sale or why the analysis was not performed.

Contract Price $ N/A   Date of Contract ____   Is the property seller the owner of public record? ☐ Yes ☐ No   Data Source(s) ____
Is there any financial assistance (loan charges, sale concessions, gift or downpayment assistance, etc.) to be paid by any party on behalf of the borrower?  ☐ Yes ☐ No
If Yes, report the total dollar amount and describe the items to be paid.

## NEIGHBORHOOD

Note: Race and the racial composition of the neighborhood are not appraisal factors.

| Neighborhood Characteristics | One-Unit Housing Trends | One-Unit Housing | Present Land Use % |
|---|---|---|---|
| Location ☐ Urban ☒ Suburban ☐ Rural | Property Values ☐ Increasing ☐ Stable ☒ Declining | PRICE $ (000) / AGE (yrs) | One-Unit 60 % |
| Built-Up ☒ Over 75% ☐ 25-75% ☐ Under 25% | Demand/Supply ☐ Shortage ☐ In Balance ☒ Over Supply | 100 Low 3 | 2-4 Unit 10 % |
| Growth ☐ Rapid ☒ Stable ☐ Slow | Marketing Time ☒ Under 3 mths ☐ 3-6 mths ☐ Over 6 mths | 200+ High 20 | Multi-Family 10 % |
| | | 155 Pred. 15 | Commercial 10 % |
| | | | Other 10 % |

Neighborhood Boundaries   The subject s bordered to the north by Flamingo, to the east by Buffalo, to the south by Tropicana and to the west by S Durango.
Neighborhood Description   The Neighborhood is located in close proximity to employment, recreation, highway system, shopping, schools, and support services.

Market Conditions (including support for the above conclusions)   WITHIN THE PAST 18 MONTHS AVERAGE SALES PRICES HAVE BEEN UNSTABLE AND DECLINING WITHIN THE LAS VEGAS VALLEY. THE MARKET APPEARS TO HAVE AN OVER SUPPLY OF INVENTORY. IT IS TYPICAL FOR SELLERS IN THIS MARKET TO PAY UP TO 3% TOWARDS BUYERS CLOSING COSTS.

## SITE

| Field | Value |
|---|---|
| Dimensions | 0.09 Acres |
| Area | 3,986 |
| Shape | Rectangular |
| View | Residential |
| Specific Zoning Classification | Residential |
| Zoning Description | R-1 Residential |
| Zoning Compliance | ☒ Legal ☐ Legal Nonconforming (Grandfathered Use) ☐ No Zoning ☐ Illegal (describe) |

Is the highest and best use of subject property as improved (or as proposed per plans and specifications) the present use?  ☒ Yes ☐ No   If No, describe

| Utilities | Public | Other (describe) | | Public | Other (describe) | Off-site Improvements - Type | Public | Private |
|---|---|---|---|---|---|---|---|---|
| Electricity | ☒ | | Water | ☒ | | Street Asphalt | ☒ | ☐ |
| Gas | ☒ | | Sanitary Sewer | ☒ | | Alley | ☐ | ☐ |

FEMA Special Flood Hazard Area ☐ Yes ☒ No   FEMA Flood Zone X500   FEMA Map # 32003C2535E   FEMA Map Date 9/27/2002
Are the utilities and off-site improvements typical for the market area?  ☒ Yes ☐ No   If No, describe
Are there any adverse site conditions or external factors (easements, encroachments, environmental conditions, land uses, etc.)?  ☐ Yes ☒ No   If Yes, describe

## IMPROVEMENTS

Source(s) Used for Physical Characteristics of Property ☐ Appraisal Files ☒ MLS ☒ Assessment and Tax Records ☐ Prior Inspection ☒ Property Owner
☐ Other (describe)   Data Source for Gross Living Area   Clark County Records

| General Description | General Description | Heating/Cooling | Amenities | Car Storage |
|---|---|---|---|---|
| Units ☒ One ☐ One with Accessory Unit | ☒ Concrete Slab ☐ Crawl Space | ☒ FWA ☐ HWBB | ☐ Fireplace(s) # ___ | ☐ None |
| # of Stories  2 Story | ☐ Full Basement ☐ Finished | ☐ Radiant | ☐ Woodstove(s) # ___ | ☒ Driveway  # of Cars 2 |
| Type ☒ Det. ☐ Att. ☐ S-Det./End Unit | ☐ Partial Basement ☐ Finished | ☐ Other | ☒ Patio/Deck Patio | Driveway Surface  Concrete |
| ☒ Existing ☐ Proposed ☐ Under Const. | Exterior Walls  Stucco/Avg | Fuel  Gas | ☐ Porch ___ | ☒ Garage  # of Cars 2 |
| Design (Style)  2 Story | Roof Surface  Clay Tile | ☒ Central Air Conditioning | ☐ Pool | ☐ Carport  # of Cars ___ |
| Year Built  1995 | Gutters & Downspouts None | ☐ Individual | ☐ Fence | ☒ Attached ☐ Detached |
| Effective Age (Yrs) 5 Years | Window Type  Glider/Avg | ☐ Other | ☐ Other | ☐ Built-in |

Appliances ☒ Refrigerator ☒ Range/Oven ☒ Dishwasher ☒ Disposal ☒ Microwave ☒ Washer/Dryer ☐ Other (describe)
Finished area above grade contains:   9 Rooms   3 Bedrooms   3 Bath(s)   2,274 Square Feet of Gross Living Area Above Grade
Additional features (special energy efficient items, etc.)   Drive-By

Describe the condition of the property and data source(s) (including apparent needed repairs, deterioration, renovations, remodeling, etc.) The subject and grounds appear to be in good condition.

Are there any apparent physical deficiencies or adverse conditions that affect the livability, soundness, or structural integrity of the property?  ☐ Yes ☒ No
If Yes, describe.

Does the property generally conform to the neighborhood (functional utility, style, condition, use, construction, etc.)?  ☒ Yes ☐ No   If No, describe.

# Exterior-Only Inspection Residential Appraisal Report  File # 100558J

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| There are | 54 | comparable properties currently offered for sale in the subject neighborhood ranging in price from $ 107,900 | | | | to $ 280,000 | |
| There are | 55 | comparable sales in the subject neighborhood within the past twelve months ranging in sale price from $ 92,000 | | | | to $ 268,100 | |
| FEATURE | SUBJECT | COMPARABLE SALE # 1 | | COMPARABLE SALE # 2 | | COMPARABLE SALE # 3 | |
| Address | 4377 Mesa Hill Dr LAS VEGAS, NV 89147-5057 | 8130 SUNDOWN VISTA AVE LAS VEGAS, NV 89147 | | 4815 VIENTO CIR LAS VEGAS, NV 89147 | | 8245 CEDAR LEAF DR LAS VEGAS, NV 89147 | |
| Proximity to Subject | | 0.10 miles NE | | 0.58 miles SW | | 0.07 miles W | |
| Sale Price | $ N/A | | $ 185,000 | | $ 200,000 | | $ 172,500 |
| Sale Price/Gross Liv. Area | $ N/A sq.ft. | $ 81.35 sq.ft. | | $ 80.55 sq.ft. | | $ 88.15 sq.ft. | |
| Data Source(s) | | Mls 972486 & Drive by | | Mls # 980705 & Drive by | | Mls # 970851 & Drive by | |
| Verification Source(s) | | DOC # 2009110602032 | | DOC # 2009121700512 | | DOC # 2009121103828 | |
| VALUE ADJUSTMENTS | DESCRIPTION | DESCRIPTION | +(-) $ Adjustment | DESCRIPTION | +(-) $ Adjustment | DESCRIPTION | +(-) $ Adjustment |
| Sales or Financing Concessions | | FHA REO $7,800 | -7,800 | FHA REO $5,280 | -5,280 | FHA REO $6,037 | -6,037 |
| Date of Sale/Time | | 11/6/09 7DOM | | 12/15/09 7DOM | | 12/11/09 11DM | |
| Location | Suburban | Suburban | | Suburban | | Suburban | |
| Leasehold/Fee Simple | Fee Simple | Fee simple | | Fee simple | | Fee simple | |
| Site | 3,986 Sq Ft | 4003 Sq Ft | | 7810 Sq Ft | -3,000 | 4014 Sq Ft | |
| View | Residential | Residential | | Residential | | Residential | |
| Design (Style) | 2 Story | 2 Story | | 2 Story | | 2 Story | |
| Quality of Construction | Average | Average | | Average | | Average | |
| Actual Age | 15 Years | 15 Years | | 20 Years | | 15 Years | |
| Condition | Good | Good | | Good | | Good | |
| Above Grade | Total / Bdrms. / Baths | Total / Bdrms. / Baths | | Total / Bdrms. / Baths | | Total / Bdrms. / Baths | |
| Room Count | 9 / 3 / 3 | 9 / 3 / 3 | | 8 / 4 / 3 | | 8 / 4 / 3 | |
| Gross Living Area | 2,274 sq.ft. | 2,274 sq.ft. | | 2,483 sq.ft. | | 1,957 sq.ft. | |
| Basement & Finished Rooms Below Grade | None N/A | None N/A | | None N/A | | None N/A | |
| Functional Utility | Average | Average | | Average | | Average | |
| Heating/Cooling | Fa/Ca | Fa/Ca | | Fa/Ca | | Fa/Ca | |
| Energy Efficient Items | Typical | Typical | | Typical | | Typical | |
| Garage/Carport | 2 Car Garage | 2 Car Garage | | 2 Car Garage | | 2 Car Garage | |
| Porch/Patio/Deck | Patio | Patio | | Patio | | Patio | |
| Fireplace | 1 Fireplace | 1 Fireplace | | 1 Fireplace | | 1 Fireplace | |
| Fence | Concrete Block | Concrete Block | | Concrete Block | | Concrete Block | |
| Pool | None | None | | None | | None | |
| Net Adjustment (Total) | | ☐ +  ☒ - | $ -7,800 | ☐ +  ☒ - | $ -8,280 | ☐ +  ☒ - | $ -6,037 |
| Adjusted Sale Price of Comparables | | Net Adj. 4.2 % Gross Adj. 4.2 % | $ 177,200 | Net Adj. 4.1 % Gross Adj. 4.1 % | $ 191,720 | Net Adj. 3.5 % Gross Adj. 3.5 % | $ 166,463 |

I ☒ did ☐ did not research the sale or transfer history of the subject property and comparable sales. If not, explain

My research ☐ did ☒ did not reveal any prior sales or transfers of the subject property for the three years prior to the effective date of this appraisal.
Data Source(s)   County Records & MLS
My research ☒ did ☐ did not reveal any prior sales or transfers of the comparable sales for the year prior to the date of sale of the comparable sale.
Data Source(s)   County Records & MLS
Report the results of the research and analysis of the prior sale or transfer history of the subject property and comparable sales (report additional prior sales on page 3).

| ITEM | SUBJECT | COMPARABLE SALE #1 | COMPARABLE SALE #2 | COMPARABLE SALE #3 |
|---|---|---|---|---|
| Date of Prior Sale/Transfer | 07/01/95 | 06/29/09 | 09/01/08 | 08/20/09 |
| Price of Prior Sale/Transfer | $145,802 | No Value Recorded | $326,600 | No Value Recorded |
| Data Source(s) | County Records & MLS | County Records & MLS | County Records & MLS | County Records & MLS |
| Effective Date of Data Source(s) | 1/14/2010 | 1/14/2010 | 1/14/2010 | 1/14/2010 |

Analysis of prior sale or transfer history of the subject property and comparable sales   The subject has had no sales in the past 36 months. All the comparable properties have had recent transfers due to foreclosure.

Summary of Sales Comparison Approach   The appraiser has made an extensive search covering a wide area for similar styled properties comparable to the subject. The comparable properties displayed are considered to be the best available for comparison. The three comparable properties are relatively similar to the subject in terms of style, age and location, so they are considered to be good indicators of the subjects market value. All the comparable properties are closed sales.

Indicated Value by Sales Comparison Approach $ 175,000

Indicated Value by: Sales Comparison Approach $ 175,000   Cost Approach (if developed) $ N/A   Income Approach (if developed) $
Reconciliation based exclusively on sales comparison approach.

This appraisal is made ☒ "as is", ☐ subject to completion per plans and specifications on the basis of a hypothetical condition that the improvements have been completed, ☐ subject to the following repairs or alterations on the basis of a hypothetical condition that the repairs or alterations have been completed, or ☐ subject to the following required inspection based on the extraordinary assumption that the condition or deficiency does not require alteration or repair:

Based on a visual inspection of the exterior areas of the subject property from at least the street, defined scope of work, statement of assumptions and limiting conditions, and appraiser's certification, my (our) opinion of the market value, as defined, of the real property that is the subject of this report is $ 175,000 , as of 1/14/2009 , which is the date of inspection and the effective date of this appraisal.

## Exterior-Only Inspection Residential Appraisal Report   File # 100558J

**CLARIFICATION OF INTENDED USE AND INTENDED USER:** THE INTENDED USE OF THIS REPORT IS FOR THE PURPOSE OF BANKRUPTCY PROCEEDINGS. THIS IS APPRAISAL IS NOT FOR THE USE OF PURCHASE OR REFI. THE CLIENT IS THE HOMEOWNER. DUE TO INTENDED USE OF THE APPRAISAL THE COST APPROACH AND THE 1004MC ADDENDUM WERE NOT PERFORMED. THESE FORM ARE AVAILABLE UPON REQUEST. THE SALES COMPARISON APPROACH WAS USED TO DETERMINE THE SUBJECT'S VALUE,

**SQUARE FOOTAGE:** DUE TO DIFFERENCES IN MEASURING TECHNIQUES, THE GROSS LIVING AREA CALCULATED BY THE APPRAISER MAY DIFFER FROM THAT OF PUBLIC RECORDS. THIS DOES NOT CREATE ANY NEGATIVE EFFECT ON THE INDICATED MARKET VALUE OF THE SUBJECT PROPERTY. THIS IS ALSO THE REASON THE APPRAISER MAKES NO ADJUSTMENTS TO COMPARABLES WITHIN 100 SQ FT OF THE SUBJECT.
THE APPRAISER MAY OR MAY NOT PROVIDE A SKETCH WITH THIS REPORT. IF THERE IS NO SKETCH THE APPRAISER HAS USED THE LEGALLY RECORDED SQUARE FOOTAGE MADE PUBLIC BY THE CLARK COUNTY ASSESSORS OFFICE. THIS IS AN EXTREMELY ACCURATE TOOL IN DETERMINING SQUARE FOOTAGE AND WELL ACCEPTED BY THE APPRAISER'S PEER GROUP.

**SELLER CONCESSIONS:** THE APPRAISER BELIEVES THAT 3% CONCESSIONS IS TYPICAL AND NOT EXCESSIVE. A SELLERS WILLINGS NESS TO PAY CONCESSIONS DOES NOT ALWAYS MEAN A HIGHER SALES PRICE IN A NEGOTIATION. NOR DOES IT INFLATE VALUE. THE APPRAISER DOES NOT ADJUST FOR CONCESSIONS FOR 3% AND UNDER. ANY CONCESSIONS ABOVE 3% MAY RECEIVE AN ADJUSTMENT AT THE APPRAISER'S DISCRETION.

**COST APPROACH:** The cost approach has no relevance on the appraisers's opinion of value. With the large value decline in the market the cost approach has become increasing irrelevant as replacement costs are far greater than the actual value of the home. Cost data books such as Marshall & Swift are far behind actual market trends. Cost approach is available upon lender request. This is a typical trend among the appraiser's peer group.

**LIST TO SALES PRICE:** FOR ALL PENDING, CONTINGENT AND ACTIVE COMPARABLES THERE IS A LIST TO SALES PRICE ADJUSTMENT. THIS IS DERIVED FROM QUARTERLY DATA PROVIDED TO MEMBERS OF THE GREATER LAS VEGAS ASSOCIATION OF REALTORS FOR SINGLE FAMILY HOMES BY ZIP CODE.

THE APPRAISER RESERVES THE RIGHT TO AMEND THE OPINION OR CONCLUSIONS BASED ON NEW OR REVISED INFORMATION.

### COST APPROACH TO VALUE (not required by Fannie Mae)

Provide adequate information for the lender/client to replicate the below cost figures and calculations.
Support for the opinion of site value (summary of comparable land sales or other methods for estimating site value)    N/A

ESTIMATED ☐ REPRODUCTION OR ☒ REPLACEMENT COST NEW      OPINION OF SITE VALUE ............ =$
Source of cost data                                      DWELLING           Sq.Ft. @ $        =$
Quality rating from cost service   Effective date of cost data              Sq.Ft. @ $        =$
                                                                                              =$
Comments on Cost Approach (gross living area calculations, depreciation, etc.)
                                                         Garage/Carport     Sq.Ft. @ $        =$
                                                         Total Estimate of Cost-New           =$
                                                         Less     Physical | Functional | External
                                                         Depreciation                         =$(         )
                                                         Depreciated Cost of Improvements     =$
                                                         "As-is" Value of Site Improvements   =$

Estimated Remaining Economic Life (HUD and VA only)    Years  INDICATED VALUE BY COST APPROACH    =$

### INCOME APPROACH TO VALUE (not required by Fannie Mae)

Estimated Monthly Market Rent $    N/A    X Gross Rent Multiplier    N/A    = $           Indicated Value by Income Approach
Summary of Income Approach (including support for market rent and GRM)    N/A

### PROJECT INFORMATION FOR PUDs (if applicable)

Is the developer/builder in control of the Homeowners' Association (HOA)? ☐ Yes ☐ No    Unit type(s) ☐ Detached ☐ Attached
Provide the following information for PUDs ONLY if the developer/builder is in control of the HOA and the subject property is an attached dwelling unit.
Legal Name of Project
Total number of phases         Total number of units            Total number of units sold
Total number of units rented   Total number of units for sale   Data source(s)
Was the project created by the conversion of existing building(s) into a PUD? ☐ Yes ☐ No  If Yes, date of conversion
Does the project contain any multi-dwelling units? ☐ Yes ☐ No  Data Source(s)
Are the units, common elements, and recreation facilities complete? ☐ Yes ☐ No  If No, describe the status of completion.

Are the common elements leased to or by the Homeowners' Association? ☐ Yes ☐ No  If Yes, describe the rental terms and options.

Describe common elements and recreational facilities.

## Exterior-Only Inspection Residential Appraisal Report   File # 100558J

This report form is designed to report an appraisal of a one-unit property or a one-unit property with an accessory unit; including a unit in a planned unit development (PUD). This report form is not designed to report an appraisal of a manufactured home or a unit in a condominium or cooperative project.

This appraisal report is subject to the following scope of work, intended use, intended user, definition of market value, statement of assumptions and limiting conditions, and certifications. Modifications, additions, or deletions to the intended use, intended user, definition of market value, or assumptions and limiting conditions are not permitted. The appraiser may expand the scope of work to include any additional research or analysis necessary based on the complexity of this appraisal assignment. Modifications or deletions to the certifications are also not permitted. However, additional certifications that do not constitute material alterations to this appraisal report, such as those required by law or those related to the appraiser's continuing education or membership in an appraisal organization, are permitted.

**SCOPE OF WORK:** The scope of work for this appraisal is defined by the complexity of this appraisal assignment and the reporting requirements of this appraisal report form, including the following definition of market value, statement of assumptions and limiting conditions, and certifications. The appraiser must, at a minimum: (1) perform a visual inspection of the exterior areas of the subject property from at least the street, (2) inspect the neighborhood, (3) inspect each of the comparable sales from at least the street, (4) research, verify, and analyze data from reliable public and/or private sources, and (5) report his or her analysis, opinions, and conclusions in this appraisal report.

The appraiser must be able to obtain adequate information about the physical characteristics (including, but not limited to, condition, room count, gross living area, etc.) of the subject property from the exterior-only inspection and reliable public and/or private sources to perform this appraisal. The appraiser should use the same type of data sources that he or she uses for comparable sales such as, but not limited to, multiple listing services, tax and assessment records, prior inspections, appraisal files, information provided by the property owner, etc.

**INTENDED USE:** The intended use of this appraisal report is for the lender/client to evaluate the property that is the subject of this appraisal for a mortgage finance transaction.

**INTENDED USER:** The intended user of this appraisal report is the lender/client.

**DEFINITION OF MARKET VALUE:** The most probable price which a property should bring in a competitive and open market under all conditions requisite to a fair sale, the buyer and seller, each acting prudently, knowledgeably and assuming the price is not affected by undue stimulus. Implicit in this definition is the consummation of a sale as of a specified date and the passing of title from seller to buyer under conditions whereby: (1) buyer and seller are typically motivated; (2) both parties are well informed or well advised, and each acting in what he or she considers his or her own best interest; (3) a reasonable time is allowed for exposure in the open market; (4) payment is made in terms of cash in U. S. dollars or in terms of financial arrangements comparable thereto; and (5) the price represents the normal consideration for the property sold unaffected by special or creative financing or sales concessions* granted by anyone associated with the sale.

*Adjustments to the comparables must be made for special or creative financing or sales concessions. No adjustments are necessary for those costs which are normally paid by sellers as a result of tradition or law in a market area; these costs are readily identifiable since the seller pays these costs in virtually all sales transactions. Special or creative financing adjustments can be made to the comparable property by comparisons to financing terms offered by a third party institutional lender that is not already involved in the property or transaction. Any adjustment should not be calculated on a mechanical dollar for dollar cost of the financing or concession but the dollar amount of any adjustment should approximate the market's reaction to the financing or concessions based on the appraiser's judgment.

**STATEMENT OF ASSUMPTIONS AND LIMITING CONDITIONS:** The appraiser's certification in this report is subject to the following assumptions and limiting conditions:

1. The appraiser will not be responsible for matters of a legal nature that affect either the property being appraised or the title to it, except for information that he or she became aware of during the research involved in performing this appraisal. The appraiser assumes that the title is good and marketable and will not render any opinions about the title.

2. The appraiser has examined the available flood maps that are provided by the Federal Emergency Management Agency (or other data sources) and has noted in this appraisal report whether any portion of the subject site is located in an identified Special Flood Hazard Area. Because the appraiser is not a surveyor, he or she makes no guarantees, express or implied, regarding this determination.

3. The appraiser will not give testimony or appear in court because he or she made an appraisal of the property in question, unless specific arrangements to do so have been made beforehand, or as otherwise required by law.

4. The appraiser has noted in this appraisal report any adverse conditions (such as needed repairs, deterioration, the presence of hazardous wastes, toxic substances, etc.) observed during the inspection of the subject property or that he or she became aware of during the research involved in performing this appraisal. Unless otherwise stated in this appraisal report, the appraiser has no knowledge of any hidden or unapparent physical deficiencies or adverse conditions of the property (such as, but not limited to, needed repairs, deterioration, the presence of hazardous wastes, toxic substances, adverse environmental conditions, etc.) that would make the property less valuable, and has assumed that there are no such conditions and makes no guarantees or warranties, express or implied. The appraiser will not be responsible for any such conditions that do exist or for any engineering or testing that might be required to discover whether such conditions exist. Because the appraiser is not an expert in the field of environmental hazards, this appraisal report must not be considered as an environmental assessment of the property.

5. The appraiser has based his or her appraisal report and valuation conclusion for an appraisal that is subject to satisfactory completion, repairs, or alterations on the assumption that the completion, repairs, or alterations of the subject property will be performed in a professional manner.

## Exterior-Only Inspection Residential Appraisal Report   File # 100558J

**APPRAISER'S CERTIFICATION:** The Appraiser certifies and agrees that:

1. I have, at a minimum, developed and reported this appraisal in accordance with the scope of work requirements stated in this appraisal report.

2. I performed a visual inspection of the exterior areas of the subject property from at least the street. I reported the condition of the improvements in factual, specific terms. I identified and reported the physical deficiencies that could affect the livability, soundness, or structural integrity of the property.

3. I performed this appraisal in accordance with the requirements of the Uniform Standards of Professional Appraisal Practice that were adopted and promulgated by the Appraisal Standards Board of The Appraisal Foundation and that were in place at the time this appraisal report was prepared.

4. I developed my opinion of the market value of the real property that is the subject of this report based on the sales comparison approach to value. I have adequate comparable market data to develop a reliable sales comparison approach for this appraisal assignment. I further certify that I considered the cost and income approaches to value but did not develop them, unless otherwise indicated in this report.

5. I researched, verified, analyzed, and reported on any current agreement for sale for the subject property, any offering for sale of the subject property in the twelve months prior to the effective date of this appraisal, and the prior sales of the subject property for a minimum of three years prior to the effective date of this appraisal, unless otherwise indicated in this report.

6. I researched, verified, analyzed, and reported on the prior sales of the comparable sales for a minimum of one year prior to the date of sale of the comparable sale, unless otherwise indicated in this report.

7. I selected and used comparable sales that are locationally, physically, and functionally the most similar to the subject property.

8. I have not used comparable sales that were the result of combining a land sale with the contract purchase price of a home that has been built or will be built on the land.

9. I have reported adjustments to the comparable sales that reflect the market's reaction to the differences between the subject property and the comparable sales.

10. I verified, from a disinterested source, all information in this report that was provided by parties who have a financial interest in the sale or financing of the subject property.

11. I have knowledge and experience in appraising this type of property in this market area.

12. I am aware of, and have access to, the necessary and appropriate public and private data sources, such as multiple listing services, tax assessment records, public land records and other such data sources for the area in which the property is located.

13. I obtained the information, estimates, and opinions furnished by other parties and expressed in this appraisal report from reliable sources that I believe to be true and correct.

14. I have taken into consideration the factors that have an impact on value with respect to the subject neighborhood, subject property, and the proximity of the subject property to adverse influences in the development of my opinion of market value. I have noted in this appraisal report any adverse conditions (such as, but not limited to, needed repairs, deterioration, the presence of hazardous wastes, toxic substances, adverse environmental conditions, etc.) observed during the inspection of the subject property or that I became aware of during the research involved in performing this appraisal. I have considered these adverse conditions in my analysis of the property value, and have reported on the effect of the conditions on the value and marketability of the subject property.

15. I have not knowingly withheld any significant information from this appraisal report and, to the best of my knowledge, all statements and information in this appraisal report are true and correct.

16. I stated in this appraisal report my own personal, unbiased, and professional analysis, opinions, and conclusions, which are subject only to the assumptions and limiting conditions in this appraisal report.

17. I have no present or prospective interest in the property that is the subject of this report, and I have no present or prospective personal interest or bias with respect to the participants in the transaction. I did not base, either partially or completely, my analysis and/or opinion of market value in this appraisal report on the race, color, religion, sex, age, marital status, handicap, familial status, or national origin of either the prospective owners or occupants of the subject property or of the present owners or occupants of the properties in the vicinity of the subject property or on any other basis prohibited by law.

18. My employment and/or compensation for performing this appraisal or any future or anticipated appraisals was not conditioned on any agreement or understanding, written or otherwise, that I would report (or present analysis supporting) a predetermined specific value, a predetermined minimum value, a range or direction in value, a value that favors the cause of any party, or the attainment of a specific result or occurrence of a specific subsequent event (such as approval of a pending mortgage loan application).

19. I personally prepared all conclusions and opinions about the real estate that were set forth in this appraisal report. If I relied on significant real property appraisal assistance from any individual or individuals in the performance of this appraisal or the preparation of this appraisal report, I have named such individual(s) and disclosed the specific tasks performed in this appraisal report. I certify that any individual so named is qualified to perform the tasks. I have not authorized anyone to make a change to any item in this appraisal report; therefore, any change made to this appraisal is unauthorized and I will take no responsibility for it.

## Exterior-Only Inspection Residential Appraisal Report  File # 100558J

20. I identified the lender/client in this appraisal report who is the individual, organization, or agent for the organization that ordered and will receive this appraisal report.

21. The lender/client may disclose or distribute this appraisal report to: the borrower; another lender at the request of the borrower; the mortgagee or its successors and assigns; mortgage insurers; government sponsored enterprises; other secondary market participants; data collection or reporting services; professional appraisal organizations; any department, agency, or instrumentality of the United States; and any state, the District of Columbia, or other jurisdictions; without having to obtain the appraiser's or supervisory appraiser's (if applicable) consent. Such consent must be obtained before this appraisal report may be disclosed or distributed to any other party (including, but not limited to, the public through advertising, public relations, news, sales, or other media).

22. I am aware that any disclosure or distribution of this appraisal report by me or the lender/client may be subject to certain laws and regulations. Further, I am also subject to the provisions of the Uniform Standards of Professional Appraisal Practice that pertain to disclosure or distribution by me.

23. The borrower, another lender at the request of the borrower, the mortgagee or its successors and assigns, mortgage insurers, government sponsored enterprises, and other secondary market participants may rely on this appraisal report as part of any mortgage finance transaction that involves any one or more of these parties.

24. If this appraisal report was transmitted as an "electronic record" containing my "electronic signature," as those terms are defined in applicable federal and/or state laws (excluding audio and video recordings), or a facsimile transmission of this appraisal report containing a copy or representation of my signature, the appraisal report shall be as effective, enforceable and valid as if a paper version of this appraisal report were delivered containing my original hand written signature.

25. Any intentional or negligent misrepresentation(s) contained in this appraisal report may result in civil liability and/or criminal penalties including, but not limited to, fine or imprisonment or both under the provisions of Title 18, United States Code, Section 1001, et seq., or similar state laws.

**SUPERVISORY APPRAISER'S CERTIFICATION:** The Supervisory Appraiser certifies and agrees that:

1. I directly supervised the appraiser for this appraisal assignment, have read the appraisal report, and agree with the appraiser's analysis, opinions, statements, conclusions, and the appraiser's certification.

2. I accept full responsibility for the contents of this appraisal report including, but not limited to, the appraiser's analysis, opinions, statements, conclusions, and the appraiser's certification.

3. The appraiser identified in this appraisal report is either a sub-contractor or an employee of the supervisory appraiser (or the appraisal firm), is qualified to perform this appraisal, and is acceptable to perform this appraisal under the applicable state law.

4. This appraisal report complies with the Uniform Standards of Professional Appraisal Practice that were adopted and promulgated by the Appraisal Standards Board of The Appraisal Foundation and that were in place at the time this appraisal report was prepared.

5. If this appraisal report was transmitted as an "electronic record" containing my "electronic signature," as those terms are defined in applicable federal and/or state laws (excluding audio and video recordings), or a facsimile transmission of this appraisal report containing a copy or representation of my signature, the appraisal report shall be as effective, enforceable and valid as if a paper version of this appraisal report were delivered containing my original hand written signature.

| APPRAISER | SUPERVISORY APPRAISER (ONLY IF REQUIRED) |
|---|---|
| Signature | Signature |
| Name  Jeremy Hughes | Name |
| Company Name  Nevada Appraisals LLC | Company Name |
| Company Address  7151 S Durango Dr | Company Address |
| Las Vegas, NV 89113 | |
| Telephone Number  702-917-7092 | Telephone Number |
| Email Address  nevadaappraisals@gmail.com | Email Address |
| Date of Signature and Report  January 14, 2010 | Date of Signature |
| Effective Date of Appraisal  1/14/2009 | State Certification # |
| State Certification # | or State License # |
| or State License #  A.0007004-RES | State |
| or Other (describe)  State # | Expiration Date of Certification or License |
| State  NV | |
| Expiration Date of Certification or License  10/31/2010 | SUBJECT PROPERTY |
| ADDRESS OF PROPERTY APPRAISED | ☐ Did not inspect subject property |
| 4377 Mesa Hill Dr | ☐ Did inspect exterior of subject property from street |
| LAS VEGAS, NV 89147-5057 |     Date of Inspection |
| APPRAISED VALUE OF SUBJECT PROPERTY $  175,000 | COMPARABLE SALES |
| LENDER/CLIENT | |
| Name | ☐ Did not inspect exterior of comparable sales from street |
| Company Name  Homeowner | ☐ Did inspect exterior of comparable sales from street |
| Company Address  4377 Mesa Hill Dr |     Date of Inspection |
| Email Address | |

Freddie Mac Form 2055 March 2005           Page 6 of 6           Fannie Mae Form 2055 March 2005

Form 2055 — "WinTOTAL" appraisal software by a la mode, inc. — 1-800-ALAMODE